Jesse Kodadek
WORDEN THANE P.C.
321 W. Broadway St., Ste. 300
Missoula, MT 59802
(406) 721-3400
jkodadek@wordenthane.com

*Attorney for Plaintiffs*

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| SHAN and DANA TOMPKINS, *Plaintiffs*, v. RAVALLI COUNTY, in its official capacity; BOARD OF COMMISSIONERS OF RAVALLI COUNTY, in its official capacity; BILL FULBRIGHT, in his official capacity as County Attorney; and JOHN C. HORAT, in his official capacity as Road and Bridge Administrator for Ravalli County, *Defendants*. | **COMPLAINT** |

This case is, among other things, an inverse condemnation action arising under the Fifth Amendment and under Article II, § 29 of the Montana Constitution, both of which prohibit the government from taking private property for public use

without first paying just compensation. The facts of this case began in 1954, when the Ravalli County Commissioners purported to declare a certain segment of a road across the Tompkins' property a county road via a resolution, even though the method the Commissioners used was not one of the statutorily authorized ways in which a county road could be established. Not long after that declaration, the County and public stopped using the road, because the state built a replacement road in its place—which is known as the Connor Cutoff road.

   Before the events of this case, the old section of the road across the Tompkins' property had been unusable for decades by the public and was impassable because of obstructions that were placed in the road by the Tompkins' predecessors in interest. Then, in 2022, following a private dispute between the Tompkins and another party, and without ever consulting the Tompkins, the Ravalli County Attorney's office issued a legal opinion that the old road across the Tompkins' property was a county road because of the Commissioners' 1954 resolution. Soon after, without the Tompkins' knowledge or consent, the Ravalli County road department removed the Tompkins' fence and gate. The County then began regularly using the road, and effectively encouraged public use of it. But because the County's actions in 1954 could not have legally established the road as a county road, the Tompkins' are entitled to a declaratory judgment that Forgotten Lane was never a validly created county road. Further, the County's recent actions

have violated the Tompkins' constitutional rights under the Fifth Amendment and under Article II, § 29 of the Montana Constitution, and the Tompkins are therefore entitled to damages and attorney fees.

## Parties, Jurisdiction, and Venue

1. Plaintiffs Shan and Dana Tompkins both grew up in Ravalli County. They currently own real property in Ravalli County.

2. Defendant Ravalli County is a political subdivision of the State of Montana.

3. Defendant Board of the County Commissioners of Ravalli County is the local governing body of Ravalli County.

4. Defendant Bill Fulbright is the County Attorney of Ravalli County.

5. Defendant John C. Horat is the Road and Bridge Administrator for Ravalli County.

6. This Court has original jurisdiction over this case under 28 U.S.C. § 1331 because it involves federal questions, including questions arising under Fifth Amendment and under 42 U.S.C. § 1983.

7. This Court has supplemental jurisdiction over the Plaintiffs' state law claims under 28 U.S.C. § 1367 because they are so related to the federal questions that they form part of the same case or controversy.

8. Venue in this division is proper under Local Rule 3.2(b) because venue in Ravalli County is proper under § 25–2–126(3), MCA, and Ravalli County is part of this division.

## Facts

9. The Tompkins' property at issue is shown as Parcel 1 on Certificate of Survey ("COS") 4026, which is recorded in Ravalli County.

10. COS 4026 depicts a "60.00' Wide Road and Utility Easement" running along the southern boundary of Parcel 1. There is a travelled way on the Tompkins' property in the general location of the easement shown on COS 4026, which is known as Forgotten Lane.

11. Forgotten Lane generally follows the route of an old road just before it passed over the West Fork of the Bitterroot River, which upon information and belief, mainly serviced a large sawmill, which was owned by Dee Shook and his family. That portion of the old road was potentially maintained by the County at one point.

12. In the early 1960s, the Tompkins' predecessors in interest, including Dee Shook, deeded to the state a portion of their property for construction of a new road—which came to be known as the Connor Cutoff road—and for a section of state right-of-way heading south off of the Connor Cutoff road. This southern spur was and still is known as Sawmill Lane.

13. Sawmill Lane has long been maintained by the County, and upon information and belief, is a legitimate county road that is partly contained within the right-of-way Shook deeded to the state.

14. After the Connor Cutoff road was completed in the early 1960s, the County

ceased maintenance on the old road across what was then Shook's property.

15. The route then became essentially useless, as the old bridge that crossed the West Fork of the Bitterroot just beyond the end of what is now known as Forgotten Lane was removed.

16. Following the completion of the new Connor Cutoff road, various individuals in the area petitioned the county to abandon portions of the old road, and many—or all—of those petitions were granted.

17. Since long before the Tompkins came to own Parcel 1, Forgotten Lane was blocked at the southwestern corner—where it intersects with Sawmill Lane—by several downed logs and other debris, along with reflectors on fence posts, which prevented access, including any vehicular access. After they purchased the property, the Tompkins removed the logs and replaced them with a post and rail fence.

18. There is a County-owned road maintenance facility on Sawmill Lane, and to get to it before the events of this case, a vehicle would have to turn south off of the new Connor Cutoff road, and travel past the intersection with Forgotten Lane, with its visible and obvious obstructions preventing access to Forgotten Lane.

19. Upon information and belief, at no time in the past decade or more, has the County ever asserted that the Tompkins' or their predecessors' actions in

blocking the end of Forgotten Lane at its intersection with Sawmill Lane was unlawful. Additionally, until the events of this case began, the County's own county road-mapping website showed Forgotten Lane as a private road. Recently, however, the County's website was revised to show that Forgotten Lane is allegedly a public road.

20. One of the parcels adjoining the Tompkins' property to the south is owned by the Don and Janet Brock Family Trust. In 2018, Janet Brock, in her capacity as Trustee of that Trust, sued the Tompkins in state district court, alleging she had an express easement over the Tompkins' property because of the "easement" shown on COS 4026, which she claimed benefitted her property because COS 4026 created an easement by reference.

21. Brock's property is not legally described or shown on COS 4026.

22. Upon receipt of the complaint, the Tompkins answered and immediately moved for summary judgment, because COS 4026 did not satisfy the easement-by-reference doctrine.

23. Brock cross-moved for summary judgment, arguing only that COS 4026 did, as a matter of law, create an easement by reference.

24. The district court eventually issued an order, agreeing with the Tompkins that there was no easement by reference, but suggesting that Brock might have some other form of access.

25. Soon after, on information and belief, counsel for Brock went to Ravalli County and requested a legal opinion on the status of Forgotten Lane.

26. On January 13, 2022 the Ravalli County Attorney's Office responded to that request with a letter—addressed only to Brock's counsel—concluding that "Forgotten Lane is a County road as adopted by the 1954 Resolution of the Ravalli County Commissioners." A copy of that letter is attached as Exhibit 1.

27. That letter was not contemporaneously provided to the Tompkins by the County, even though Ravalli County knew or should have known that the status of Forgotten Lane was subject to ongoing litigation.

28. Indeed, at no point during the time the County was considering the status of Forgotten Lane did they ever contact the Tompkins in any capacity.

29. The County Attorney's reference to the "1954 Resolution" refers to actions taken by the Commissioners that year, where they commissioned a survey of existing roads in the county, and then provided notice to the public that they would consider those roads as "county roads," while abandoning any roads not shown on those surveys.

30. Following that notice, the Commissioners adopted a resolution purporting to declare the roads shown on that map as county roads, and abandoning as county roads any other roads not shown.

31. On February 1, 2022, John Horat signed a letter on Ravalli County letterhead,

addressed to the Tompkins, and sent by regular mail, asserting that because Forgotten Lane was a county road, the fences they had installed were an illegal encroachment. The letter directed the Tompkins to remove the fences by February 14. A copy of that letter is attached as Exhibit 2.

32. During the entire first two weeks of February, the Tompkins were in Nevada, and they did not receive a copy of that letter, and were totally unaware that the County had decided that Forgotten Lane was a county road, or that they were allegedly breaking the law by maintaining a fence across it.

33. Upon information and belief, at some point before the Tompkins returned to Montana, County employees removed the fence and gate the Tompkins had installed on Forgotten Lane.

34. The County and the public began regularly using Forgotten Lane, including to access the County's road maintenance facility on Sawmill Lane, even though it is a lesser-quality access and more dangerous than Sawmill Lane itself.

35. Upon information and belief, the County has now graded Forgotten Lane.

36. The problem with the County's actions is that Forgotten Lane was never a validly created county road, and the County's position that it was a county road by virtue of a "resolution" of the Ravalli County Commissioners is a legal impossibility, because that is not one of the ways a county road can be established under any version of Montana law that has existed since Montana

became a state.

37. Indeed, while there are several ways a county road can be created, a "resolution" by the county commissioners is not among them.

38. Thus, the threshold issue in this case is that Forgotten Lane was never legally established as a county road—whether by the 1954 "resolution" or in any other manner.

39. And to the extent that there may have been a public prescriptive easement over Forgotten Lane before the construction of the new Connor Cutoff road, any prescriptive easement has long since been extinguished by reverse prescription.

## Count 1—Declaratory Judgment

40. Plaintiffs incorporate the preceding allegations in this part.

41. Plaintiffs bring this count under 28 U.S.C. § 2201 and under the Montana Uniform Declaratory Judgments Act at § 27–8–201, Mont. Code Ann.

42. The actions of the County Commissioners in 1954 of adopting a "resolution" that portions of the old road across the Tompkins' property were a county road was a legal impossibility, void, and without effect, because that was never one of the statutorily authorized ways in which a county road could be created.

43. If the County's resolution had any effect, it was limited to recognizing that the County was, at one point, presumably maintaining portions of the old road.

44. If portions of the old road that traversed what is now Forgotten Lane might

have been a public prescriptive easement, any such easement has long since been extinguished by reverse prescription, because the actions of the Tompkins and their predecessors in interest have prevented public use of Forgotten Lane for far more than the five years required by statute.

45. The Tompkins are thus entitled to a declaratory judgment that Forgotten Lane is not now, and never was, a county road, and thus that they have the right to exclude the public and the government from their private property, including by replacing the fencing that the County illegally removed.

## Count 2: 42 U.S.C. § 1983—Fifth Amendment Takings

46. Plaintiffs incorporate the preceding allegations in this part.

47. The Fifth Amendment's Takings Clause is made applicable to the states via the Fourteenth Amendment.

48. Based on the above facts, the actions of each of the Defendants, which were under color of state law, violated the Tompkins' constitutional rights via their acts, order, policies, practices, customs and procedures in several ways. By way of example:

    a. the Board of County Commissioners violated the Tompkins' constitutional rights by wrongly declaring and then maintaining that Forgotten Lane was a county road via a process that was never authorized by statute;

    b. the County Attorney violated the Tompkins' constitutional rights in

   wrongly concluding that Forgotten Lane was a county road based on the legally deficient 1954 resolution, and by failing notify them or seek their input;

   c. the Road and Bridge Administrator violated the Tompkins' constitutional rights by directing County staff to physically remove the Tompkins' fences, when the County had no right to do so; and

   d. the County violated the Tompkins' constitutional rights by allowing and encouraging public and governmental use of the Tompkins' property.

49. As a direct and proximate cause of the Defendants' actions, the Tompkins have suffered damages in an amount to be determined at trial.

50. The Tompkins are further, or alternatively, entitled to injunctive relief, prohibiting the Defendants from taking any further action to deprive the Tompkins of their constitutionally protected property rights, including enjoining the Defendants from further tampering with the Tompkins property, and prohibiting the Defendants from interfering with the Tompkins' right to lawfully exclude the public from their property until and unless just compensation is paid.

51. If the Court finds that Forgotten Lane was never a county road and grants injunctive relief, the Tompkins are still entitled to relief under the Fifth Amendment, because the Defendants' actions caused a temporary taking.

52. The Plaintiffs are entitled to attorney fees and other costs under 42 U.S.C. § 1988.

### Count 3—Constitutional Taking under Article II, § 29 of the Montana Constitution

53. Plaintiffs incorporate the preceding allegations in this part.

54. Much like the Fifth Amendment, Article II, § 29 of the Montana Constitution prohibits the government from taking private property without first paying the property owner just compensation. But the Montana Constitution also prohibits the government from damaging private property without paying just compensation, and thus the Montana Supreme Court has interpreted this provision to provide greater protection to landowners than the Fifth Amendment.

55. The Defendants' actions have taken and damaged the Tompkins' property, and the Tompkins have suffered damages in an amount to be determined at trial, and are also entitled to the necessary expenses of litigation, as provided by Article II, § 29.

### Prayer for Relief

Based on the above, the Tompkins request the following relief:

A. For a judgment that Forgotten Lane was never a validly created county road, and a judgment that if it was ever a public prescriptive easement, any such easement has long been extinguished by reverse prescription.

B.  For a judgment that the actions of the Defendants have violated the Tompkins' constitutional rights arising under both the Fifth Amendment and Article II, § 29 of the Montana Constitution;

C.  Alternatively or additionally, for injunctive relief permitting the Tompkins to replace the fencing on Forgotten Lane and corresponding injunctive relief preventing the County Defendants from removing the fencing or otherwise interfering with the Tompkins' constitutional right to exclude the public from their property, until and unless just compensation is paid;

D.  For attorney fees and necessary expenses of litigation consistent with 42 U.S.C. § 1988 and Article II, § 29 of the Montana Constitution.

E.  For any other appropriate relief.

April 7, 2022.

WORDEN THANE P.C.  
*Attorneys for Plaintiffs*

/s/ Jesse Kodadek  
Jesse Kodadek