IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| SHAN and DANA TOMPKINS,<br><br>    Plaintiffs,<br><br> vs.<br><br>RAVALLI COUNTY, a political subdivision of the State of Montana; BOARD OF COMMISSIONERS OF RAVALLI COUNTY, in its official capacity; BILL FULBRIGHT, in his official capacity as County Attorney; and JOHN C. HORAT, in his official capacity as Road and Bridge Administrator for Ravalli County,<br><br>    Defendants. | CV 22-74-KLD<br><br><br>ORDER |

Defendants Ravalli County ("County"), Board of Commissioners of Ravalli County ("Board"), Bill Fulbright ("Fulbright"), and John C. Horat ("Horat"), (collectively, "Defendants"), move to dismiss Plaintiffs Shan and Dana Tompkins' ("Tompkins") Complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendants' motion is granted in part and denied in part for the reasons discussed below.

1

I.    **Background**[1]

The Tompkins brought this action under 42 U.S.C. § 1983 and 28 U.S.C.

§ 2201, claiming inverse condemnation and seeking to clarify the status of a stretch

of gravel road named Forgotten Lane, which traverses the southern edge of their

property near Connor, Montana, in Ravalli County. The Tompkins allege the

County took their private property for public use without just compensation, in

violation of the Fifth Amendment to the United States Constitution and Article II,

§ 29 of the Montana Constitution, when it removed a fence and a gate they

installed across Forgotten Lane in October 2017. (Doc. 3).

Certificate of Survey No. 4026, recorded in 1987, shows the Tompkins'

property as "Parcel 1" and depicts a "60.00' Wide Road and Utility Easement"

running along the parcel's southern boundary, generally following the route of an

old road, which the Tompkins claim "mainly serviced a large sawmill" and "was

potentially maintained by the County at one point." (Doc. 3, ¶ 11; Doc. 18-9, at 1).

This stretch of old road, now called Forgotten Lane, was once the only road across

the West Fork of the Bitterroot River, connecting U.S. Highway 93 and the West

---

[1] Consistent with the legal standards applicable to Rule 12(b)(6) motions, the
following facts are taken from the Complaint, evidence on which the Complaint
necessarily relies, and court documents of which this Court may take judicial
notice.

2

Fork Road (Montana Secondary Highway 473). (Doc. 18-12, at 4). In the early 1960s, the Tompkins' predecessors in interest deeded to the state a portion of their property for the construction of a new east-west road to the north of Forgotten Lane, which came to be known as the Connor Cutoff Road, and for a section of state right-of-way heading south along the parcel's western edge that extended Sawmill Lane from its northern terminus with Forgotten Lane to the new Connor Cutoff Road. (Doc. 3, ¶ 12; Doc. 18-12, at 4–5). After the Connor Cutoff Road was complete, the County ceased maintenance of Forgotten Lane and the old bridge was removed. (Doc. 3, ¶¶ 14–15). Today, the Tompkins' property roughly resembles a right triangle, with the Connor Cutoff Road forming the parcel's northern border and intersecting Sawmill Lane at its western edge, and Forgotten Lane making the hypotenuse of the triangle's southern boundary. (Doc. 18-9, at 1).

Whether Forgotten Lane is a public or private road is at the heart of the dispute in this case. The Tompkins allege the property's previous owners had blocked access to Forgotten Lane from Sawmill Lane at least a decade ago by placing several downed logs and other debris across the roadway preventing vehicular access. (Doc. 3, ¶ 17). After they purchased the property, in October 2017, the Tompkins removed the logs and replaced them with a post and rail fence and a gate. (Doc. 3, ¶ 17). The Tompkins allege that, despite these visible and

obvious obstructions, the County never claimed the obstructions were unlawful, and further, until the events of this case began, the County's own road-mapping website showed Forgotten Lane as a private road. (Doc. 3, ¶¶ 18–20).

The Don and Janet Brock Family Trust owns two adjoining parcels across Forgotten Lane to the south of the Tompkins' property with one parcel bordering Sawmill Lane along its western edge. (Doc. 3, ¶ 21; Doc. 18-12, at 2). In October 2018, Janet Brock, as trustee, sued the Tompkins in state district court, alleging the "60.00' Wide Road and Utility Easement" was an express easement allowing her to use the road across the Tompkins' property. (Doc. 3, ¶ 21; Doc. 18-11, at 5). In an order denying both parties' motions for summary judgment, the court found "there can be little doubt but that the easement depicted on COS 4026 is Forgotten Lane." (Doc. 18-12, at 5). Additionally, the court concluded that while Brock provided little evidence of an express grant, "[g]enuine issues of material fact exist concerning exactly what rights *the public* had, if any, to use Forgotten Lane [and] whether those rights continued after the construction of the new Connor Cutoff Road." (Doc. 18-12, at 9) (emphasis added).

On December 15, 2021, six months after the state district court's decision denying summary judgment, Brock's counsel inquired with the County about the legal status of Forgotten Lane. (Doc. 3, ¶ 26; Doc. 18, at 11). On January 13, 2022,

4

the County replied, stating that Forgotten Lane had been adopted as a county road by a 1954 resolution of the Board and based on the County's research, the road had not been abandoned by the County. (Doc. 3-1). The letter also stated, "[w]ith Forgotten Lane being a County Road, a private citizen should not fence off and restrict usage of this road." (Doc. 3-1). On January 26, 2022, Brock's counsel notified the County that a fence was blocking Forgotten Lane and specifically requested "assistance from the County in having the obstructions removed." (Doc. 18, at 13).

On February 1, 2022, Horat sent the Tompkins a notice requiring them to remove the fencing across Forgotten Lane pursuant to Montana Code Annotated §§ 7-14-2134 to -36. (Doc. 3-2). The notice, sent via regular and certified mail and posted on the encroachments on the property, warned the Tompkins they had two weeks to remove the fences or the County would do so at their expense. (Doc. 3-2). The Tompkins, who were out of the state at the time, claim they did not receive the notice. (Doc. 3, ¶ 33). When the Tompkins neither responded nor removed the encroachments by the deadline, the County removed the fence and gate and later graded the road. (Doc. 3, ¶¶ 34–36).

The Tompkins filed this action on April 8, 2022. (Doc. 1). The County now moves to dismiss the Tompkins' Amended Complaint, asserting the Tompkins fail

to allege sufficient facts establishing that Forgotten Lane, which the County claims is a county road, was ever abandoned by the County. The Tompkins contend the question is not whether Forgotten Lane was abandoned but whether it was ever properly established as a county road.

Additionally, the County argues this Court should dismiss the Tompkins' takings claims because the County was operating under a good faith belief that Forgotten Lane was a county road when it complied with its legal obligation to remove the encroachments; thus, pursuant to the Montana Supreme Court's holding in *Letica Land Co., LLC v. Anaconda-Deer Lodge Cnty.*, 435 P.3d 634 (Mont. 2019) ("*Letica II*"), the Tompkins cannot assert a viable constitutional taking claim under federal or state law.[2]

## II.   <u>Legal Standard</u>

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is proper under Rule 12(b)(6) only when the complaint lacks a cognizable legal

---

[2] The parties agree the Tompkins' claims against Fulbright, in his official capacity as Ravalli County Attorney; Horat, in his official capacity as Ravalli County Road and Bridge Administrator; and the Board, in its official capacity, should all be dismissed as redundant of their claims against Ravalli County. Accordingly, the County's motion to dismiss the individual Defendants in their official capacities is granted.

theory or fails to allege sufficient facts to support a cognizable legal theory. *Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013) (quoting *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008)). When reviewing a Rule 12(b)(6) motion to dismiss, the court accepts all factual allegations in the complaint as true and construes the pleading in the light most favorable to the nonmoving party. *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 15 F.4th 885, 889 (9th Cir. 2021).

Dismissal under Rule 12(b)(6) is informed by Rule 8(a)(2), which requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). To survive a 12(b)(6) motion to dismiss, a plaintiff's complaint must contain sufficient facts "to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Services, Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). Plausibility is context-specific, requiring courts to draw on judicial experience and common sense when evaluating a complaint. *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014). "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Conclusory allegations and unwarranted inferences are insufficient to defeat a motion to dismiss. *Johnson v. Lucent Techs. Inc.*, 653 F.3d 1000, 1010 (9th Cir.

2011); *Twombly*, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.").

Generally, a district court may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6). *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018) (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)). When matters outside the pleadings are considered, the motion to dismiss under Rule 12(b)(6) is treated as one for summary judgment under Rule 56. *See Khoja*, 899 F.3d at 998; *Olsen v. Idaho State Bd. of Medicine*, 363 F.3d 916, 921–22 (9th Cir. 2004).

There are two exceptions to this rule: the incorporation-by-reference doctrine, and judicial notice under Federal Rule of Evidence 201. *Khoja*, 899 F.3d at 998 (explaining the two exceptions). The incorporation-by-reference doctrine allows a court to consider evidence on which the complaint "necessarily relies" if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion. *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). A court may take judicial notice of undisputed "matters of public record" including other

state or federal court proceedings. *Lee*, 250 F.3d at 688–89; *Duckett v. Godinez*, 67 F.3d 734, 741 (9th Cir. 1995).

Both parties, but primarily the County, attached material outside the pleadings to their briefing, including public county records and court documents from the state court proceeding, *Brock v. Tompkins*, Cause No. DV-18-248 (Oct. 10, 2018). While the Tompkins challenge the County's characterization of the public documents the County submitted as attachments and referenced in its briefing, they do not challenge the authenticity of the documents themselves. Thus, because neither party questioned the authenticity of the documents, the Court will consider the evidence referenced in and central to the Complaint when assessing its sufficiency under the standards applicable to a motion to dismiss.

## III.   Discussion

### A. Constitutional Takings

The Takings Clause of the Fifth Amendment to the United States Constitution and Article II, § 29 of the Montana Constitution protect private property rights from being taken for public use without just compensation. *Knick v. Township of Scott*, 139 S.Ct. 2162, 2167 (2019); *Egan Slough Cmty. v. Flathead Cnty. Bd. of Cnty. Comm'rs*, 506 P.3d 996, 1016 (Mont. 2022). Section 1983 provides a cause of action for individuals who have been "depriv[ed] of any rights,

privileges, or immunities secured by the Constitution and laws" of the United States by a person or entity acting under the color of state law. 42 U.S.C. § 1983. "Section 1983 'is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 (1979)). A property owner has suffered a violation of his Fifth Amendment rights when the government takes his property for public use without paying for it. *Knick*, 139 S.Ct. at 2170.

"A public easement is not the equivalent of a county road." *Pedersen v. Dawson Cnty.*, 17 P.3d 393, 396 (Mont. 2000). An easement is a nonpossessory interest in land, granting only the right to use. *Kuhlman v. Rivera*, 701 P.2d 982, 985 (Mont. 1985); *Bolinger v. City of Bozeman*, 493 P.2d 1062, 1064 (Mont. 1972). County roads are those that are "opened, established, constructed, maintained, changed, abandoned, or discontinued by a county in accordance with Title 7, chapter 14, or that have been the subject of a request under 7-14-2622 and for which a legal route has been recognized by a district court as provided in 7-14-2622." Mont. Code Ann. § 60-1-201 (2022); *Pederson*, 17 P.3d at 395 (citing Mont. Code Ann. § 60-1-201 (1997 and 1999)).

10

The current version of Title 7 defines "county road" as:

(i) a road that is petitioned by freeholders, approved by resolution, and opened by a board of county commissioners in accordance with this title;

(ii) a road that is dedicated for public use in the county and approved by resolution by a board of county commissioners;

(iii) a road that has been acquired by eminent domain pursuant to Title 70, chapter 30, and accepted by resolution as a county road by a board of county commissioners;

(iv) a road that has been gained by the county in an exchange with the state as provided in 60-4-201; or

(v) a road that has been the subject of a request under 7-14-2622 and for which a legal route has been recognized by a district court as provided in 7-14-2622.

Mont. Code Ann. § 7-14-2101(4)(b). This statute was essentially the same in 1954 when the County passed its resolution adopting and declaring Forgotten Lane, and others, as county roads.

The Montana Supreme Court has stated that recognizing a road on a county map is not determinative of whether a county established a road by petition. *Letica Land Co., LLC v. Anaconda-Deer Lodge Cnty.*, 362 P.3d 614, 620 (Mont. 2015) ("*Letica I*"). "Implicit in all of Title 7, Chapter 14 as well as [the Montana Supreme Court's] prior decisions is that county roads cannot be created without the

county's intent, expressed through its board of commissioners, to do so." *Pedersen*, 17 P.3d at 396.

In 1909, the statutory procedures for establishing a county road in Montana generally required the following steps: first, ten or a majority of the freeholders in a road district petitioned the Board of County Commissioners for the proposed road; next, the Commissioners appointed three "viewers" to "view and mark out" the road and submit to the Board a written report, including estimated costs and their opinion as to the necessity of the road, as well as estimated costs and the feasibility of other routes that would accomplish the same purposes; and finally, the Board held a hearing on the report and either approved or rejected the report and, if approved, ordered the road open for public travel and required the county surveyor to survey the road, plat it, and file his field notes with the county clerk. Revised Codes of Montana of 1907, §§ 1390–1398 (1908). *See also Oates v. Knutson*, 595 P.2d 1181, 1183 (Mont. 1979) (summarizing similar statutory requirements for laying out and opening a county road for public use under sections 1809–1818 of the 5th Division General Laws, 1887).

The standard for determining the existence of a public road in Montana is "not proof of strict adherence to these statutory procedures; rather, it is whether 'the record taken as a whole shows that a public road was created.'" *Letica I*, 362

P.3d at 618 (citing *Reid v. Park Cnty.*, 627 P.2d 1210, 1213 (Mont. 1981) (finding "strict compliance with the jurisdictional requirements to establish a road by petition would pose an unjustifiable burden on the public to prove a public road created nearly 100 years earlier")). Once a roadway becomes public, "a county must take affirmative steps to indicate intention to abandon such road." *Letica I*, 362 P.3d at 620 (quoting *Galassi v. Lincoln Cnty. Bd. of Comm'rs*, 80 P.3d 84, 87 (Mont. 2003)).

The County argues the Amended Complaint fails to establish a Fifth Amendment violation because the Tompkins fail to allege facts supporting an inverse condemnation or taking under the United States or Montana constitutions. The County maintains that, because there are historical records indicating Forgotten Lane was a county road as early as 1909, to succeed in a constitutional takings claim under either state or federal law, the Tompkins would need to allege facts to support a finding that, at some point, Forgotten Lane became a private road, either by abandonment, by operation of law, or by the judgment of a court or order of the Board. The Tompkins counter that, other than a legally insufficient 1954 resolution of the Board adopting Forgotten Lane as a county road, the County has provided no evidence that Forgotten Lane was ever *officially* designated a county road. The Tompkins argue that because the County has failed to

conclusively establish Forgotten Lane is a county road, they need not establish the County's abandonment or that the road otherwise became private to show the County violated their rights when it removed the fence and gate and opened the road to public use.

The Court agrees that the County has not established as a matter of law that Forgotten Lane was ever an official county road. To begin with, the County has not provided the Court with a concrete legal argument or framework to support its conclusion that Forgotten Lane is officially a county road. Instead, the County offers up numerous historical public documents, including conveying instruments and surveys of parcels bordering Forgotten Lane. Some of these documents show Forgotten Lane as a road and utility easement, while others go as far as to label the strip a "county road." None of the County's evidence, however, conclusively establishes—and the County never conclusively alleges—the precise method the County used to designate Forgotten Lane a county road, and it is well established that "a public easement is not the equivalent of a county road." *Pedersen*, 17 P.3d at 396.

The County's January 13, 2022 letter to the Tompkins asserts the road became public by a 1954 resolution of the Board, but the County's reply brief focuses its argument on a 1909 petition to the Board, which it claims "further

14

enlightens the establishment of the road." Attached as an exhibit to the County's reply brief, the 1909 petition shows that citizens initiated the official process for creating a county road "near the foot of the McFee Hill" by submitting a petition to the Board on January 4, 1909 (Doc. 22-1, at 1; Exh. M-1). On March 2, 1909, Board minutes indicate the Board appointed viewers to visit the site on March 22, 1909 (Doc. 22-1, at 3; Exh. M-3). However, nothing submitted by the County establishes the viewers ever returned to the Board with a report, or that the Board accepted the report and granted the petition.

While a more developed record, taken as a whole, may ultimately lead this Court to conclude the County officially designated Forgotten Lane a public road at some point, the current record is inconclusive. Accepting all factual allegations in the Complaint as true and construing the pleadings in a light most favorable to the Tompkins, the Court finds the Tompkins have plausibly alleged the road was never public and dismissal for failure to allege abandonment by the County is premature.

Likewise, the record is not sufficient to establish the County acted reasonably under a claim of right. The County asserts *Letica II* supports its claim of right theory, arguing that once it determined Forgotten Lane was a county road, the County did nothing more than reasonably perform its legal obligation to timely remove the encroachments. In *Letica II*, the Montana Supreme Court held that

Anaconda-Deer Lodge County's reasonable and good faith reliance on a petition and other evidence related to the historical use of a road, such as county records, maps, and surveys, precluded the plaintiff's claim that a taking had occurred. 435 P.3d at 637. The court relied primarily on *Langford v. United States*, 101 U.S. 341 (1879), to conclude that "when agents of the United States wrongly believe that the government owns some land, and occupy it under a claim of right, the occupation is a noncompensable tort rather than a taking." *Letica II*, 435 P.3d at 637 (quoting *In the Matter of Chicago, Milwaukee, St. Paul and Pacific R. Co.*, 799 F.2d 317, 326 (7th Cir. 1986)).

While perhaps factually similar to the present case, the Montana Supreme Court's summary judgment determination in *Letica II* does not preclude the Tompkins' well-pleaded takings claims at this early stage in the proceedings. The record in *Letica II* was significantly more developed, having gone through a trial in the state district court on the bifurcated road status issue, which was then appealed and subsequently remanded for the district court to consider the constitutional issues implicated by the Montana Supreme Court's decision in *Letica I*.

To illustrate the point, in *Letica II*, the Montana Supreme Court determined the county's actions were reasonable and its conduct was reinforced by the district court's order denying a preliminary injunction to the plaintiff on the grounds that

the county was likely to succeed on the merits. *Letica II*, 435 P.3d at 637. On the other hand, in this case, the Tompkins argue the County's actions were not reasonable or done in good faith, claiming the County allowed obvious obstructions to block access to Forgotten Lane for more than a decade before taking any action. (Doc. 3, ¶¶ 17–19). It is not the Court's role to wade through factual disputes in resolving a motion to dismiss; "a district court weighing a motion to dismiss asks 'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Twombly*, 550 U.S. at 563 n.8 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Davis v. Scherer*, 468 U.S. 183 (1984)). Accordingly, the County's claim of right theory does not preclude the Tompkins' takings claims for purposes of this motion to dismiss.

The County makes one final argument on this point: that a curative statute, § 32-103, R.C.M. (1947), which was codified in 1905 as § 2600 of the Political Code of 1895 and remained on the books until it was repealed in 1959, remedied any defects in the procedure the County used to create Forgotten Lane. *Garrison v. Lincoln Cnty.*, 77 P.3d 163, 165 (Mont. 2003). That statute read as follows:

> All highways, roads, . . . laid out or erected by the public, or now traveled or used by the public, or if laid out or erected by others, dedicated or abandoned to the public, or made such by the partition of real property, are public highways.

Section 32-103, R.C.M. (quoted in *Reid*, 627 P.2d at 1212).

In *Reid*, Park County never produced evidence of a petition describing the disputed road or establishing it was signed by ten qualified petitioners, and the records failed to show the commissioners ever gave notice to the affected landowners, as required by statute. *Reid*, 627 P.2d at 1212. However, the County introduced minutes from six meetings of the county commissioners held between 1903 and 1905, showing the commissioners did appoint viewers and eventually open the road to the public. *Reid*, 627 P.2d at 1212. The Montana Supreme Court held "the record taken as a whole" showed a public road was created, and it affirmed the district court's finding that, despite the undisputed deficiencies, the curative statute had "cured any defects that may have taken place during the 1905 proceedings when an obvious effort was made by the county commissioners to establish a road." *Reid*, 627 P.2d at 1212.

Despite asserting the curative statute remedied the gaps in the County's evidence in this case, the County fails to clearly articulate which statutory requirements need curing. The County alleges several vague theories but never conclusively states when or how the County allegedly designated Forgotten Lane a public road. If the County is relying on the 1909 petition to establish a public effort to create a county road by petition, when compared to *Reid*, the County's evidence

18

is far less convincing. The County attached the 1909 petition and minutes from a single Board meeting to its reply brief but provided no evidence to prove the petition's ten signatories were freeholders, and the record is void of evidence indicating the Board took any steps beyond appointing viewers, that it ever accepted the petition, or that it eventually opened the road.

Additionally, there is scant evidence beyond this procedurally defective petition to persuade the Court it would be appropriate to apply the curative statute to bar the Tompkins' claims. For example, the County has not established (or even alleged) Forgotten Lane was "laid out or erected by the public," and the Tompkins' allegations dispute whether the road has been "traveled or used by the public" at all over the past decade or more. At this stage in the proceedings, the Court declines to accept the County's assertion that § 32-103, R.C.M. cured any defects in the procedure the County used to create Forgotten Lane.

For all of the reasons discussed above, the County's motion to dismiss Plaintiffs' federal and state constitutional takings claims is denied.

**B. Declaratory Judgment**

Under the Declaratory Judgment Act, "federal courts may declare the rights and other legal relations of any interested party involving an actual controversy within its jurisdiction." *Atl. Cas. Ins. Co. v. Pitchfork Invs. Co.*, No. CV-21-49-M-

KLD, 2021 WL 5810645, at *2 (D. Mont. Dec. 7, 2021) (citing 28 U.S.C.

§ 2201(a)). Similarly, Montana's Uniform Declaratory Judgments Act affords a

district court with the "power to declare rights, status, and other legal relations

whether or not further relief is or could be claimed." *Puryer v. HSBC Bank USA*,

419 P.3d 105, 110 (Mont. 2018) (citing Mont. Code Ann. § 27-8-201).

The Tompkins seek a declaratory judgment under federal and state law that

because Forgotten Lane is not now, and never was, a county road, they have the

right to exclude the public and the government from their property, including by

replacing the fencing that the County removed. The County moves to dismiss the

Tompkins' declaratory judgment claims for the same reasons it asserts the

Tompkins' constitutional takings claims should fail—the County argues the public

record supports that Forgotten Lane is a county road that was never abandoned, so

the Tompkins' claims do not state a facially plausible claim to relief.[3]

Because the County's declaratory judgment argument is premised on the

same set of facts as its takings argument, it suffers the same deficiencies regarding

---

[3] In the alternative, the County argues that under 28 U.S.C. § 1367, if the Court
dismisses Plaintiffs' federal claims, it should decline to exercise supplemental
jurisdiction over Plaintiffs' state law claims, which it argues are more
appropriately addressed in state court. Because the Court declines to dismiss
Plaintiffs' federal claims at this time, except as to the individual defendants in
their official capacities, it need not address the County's supplemental
jurisdiction argument.

this motion to dismiss. The Court declines to dismiss the Tompkins' declaratory

judgment claims for the same reasons the Court has determined it is not

appropriate to dismiss the Tompkins' constitutional takings claims at this time.

The County's motion to dismiss Plaintiffs' declaratory judgment claims is

denied.

## IV.   **Conclusion**

For the reasons discussed above,

**IT IS ORDERED** that Defendants' Motion to Dismiss the Complaint for

Failure to State a Claim for Relief under Rule 12(b)(6) is GRANTED as to

defendants Fulbright, Horat, and the Board in their official capacities and DENIED

as to all other claims.

DATED this 17th day of November, 2022.


_____
Kathleen L. DeSoto
United States Magistrate Judge